IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EVANS PARKS,

                    Petitioner,

          v.                                             CIVIL ACTION
                                                         NO. 20-4532
SUPERINTENDENT MARK
CAPOZZA, et al.,

                    Respondents.

## OPINION

**Slomsky, J.**                                              **August 11, 2022**

## I.    INTRODUCTION

Before the Court is a pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C.

§ 2254 by Evans Parks ("Petitioner"), a prisoner incarcerated at the Fayette State Correctional

Institution in LaBelle, Pennsylvania.  (Doc. No. 1.)  On June 30, 2021, United States Magistrate

Judge Elizabeth T. Hey issued a Report and Recommendation ("R&R"), recommending that the

Petition be denied and that a certificate of appealability not be issued.  (Doc. No. 22.)  Petitioner

has filed Objections to the R&R.  (Doc. No. 28.)  For reasons stated below, the Court will approve

and adopt the R&R (Doc. No. 22) and deny the Petition (Doc. No. 1).[1]

## II.    BACKGROUND

On August 2, 2017, Petitioner entered a negotiated guilty plea before the Honorable

Barbara A. McDermott in the Philadelphia Court of Common Pleas.  N.T. 8/2/2018 at 48.  Pursuant

---

[1]    For purposes of this Opinion, the Court has considered the Petition for a Writ of Habeas Corpus
(Doc. No. 1), the Response in Opposition to the Petition (Doc. No. 13), the Report and
Recommendation (Doc. No. 22), the Objections to the Report and Recommendation (Doc. No.
28), and the relevant state record.

to the negotiated guilty plea, Petitioner pled guilty to attempted murder and unlawful possession

of a firearm.[2] Id.  The facts underlying these charges have been summarized as follows:

> In 2015, Petitioner got into an argument with Corey Rex-Bey outside Mr. Rex-Bey's paramour's house in West Philadelphia.  Petitioner drew a silver handgun and shot Mr. Bex-Rey in the abdomen, inflicting injuries that required the removal of Mr. Rex-Bey's gallbladder, caused significant internal bleeding, and permanently damaged his bowels.  Petitioner fled to Georgia, where he was arrested on February 29, 2016.  Petitioner did not have a license to carry a firearm and had prior convictions for aggravated assault and being a prohibited person in possession of a firearm, which rendered him ineligible to carry a gun legally.

(Doc. No. 13 at 2.)

On August 2, 2017, Petitioner appeared before Judge McDermott in the Court of Common

Pleas and was sentenced to 6½-to-15 years' imprisonment for the attempted murder charge, and a

concurrent term of 5-to-10 years' imprisonment for unlawful possession of a firearm.  Id. at 14,

30, 55.  Petitioner did not file a direct appeal.  (Doc. No. 22 at 2.)

Petitioner filed a pro se petition under Pennsylvania's Post Conviction Relief Act

("PCRA"), 42 Pa. C.S.A. §§ 9541–51.  In the R & R, Judge Hey summarized the procedural history

of the case:

> On May 18, 2018, Parks filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 2541-51, alleging ineffective assistance of counsel ("IAC") for: (1) unlawfully inducing him to enter a guilty plea, (2) failing to withdraw the guilty plea, and (3) failing to file an appeal at Parks' request.  Commonwealth v. Parks, CP-51-CR-0003280-2016, Post-Conviction Relief Act Petition ¶ 6 (Phila. C.C.P. May 18, 2018).  After appointing counsel and holding an evidentiary hearing, Judge McDermott dismissed the petition.  N.T. 4/15/19 at 42-44; Commonwealth v. Parks, CP-51-CR-0003280-2016, Criminal Docket (Phila. C.C.P) ("Docket Sheet") (entry dated 4/15/19).  Judge McDermott later issued an opinion recommending affirmance on appeal identifying her reasons for dismissing the petition.  Commonwealth v. Parks, CP-51-CR-0003280-2016, Opinion (Phila. C.C.P. June 19, 2019) ("PCRA Op.")

---

[2]   The charges were brought against Plaintiff for "Attempt[ed] Murder and Possession of a Firearm by Persons Prohibited" under the Pennsylvania Violation of Uniform Firearms Act ("VUFA"), Section 6105.  (Doc. No. 13-1 at 1.)

On appeal, appointed counsel filed a Turner/Finley brief ,[3] presenting the following issues with which Parks wanted to proceed, but concluding that they were meritless:

1. IAC for:
   a. unlawfully inducing Parks to enter a guilty plea,
   b. failing to withdraw the plea as requested,
   c. failing to file an appeal,
2. The guilty plea was not knowingly and voluntarily entered, and
3. Parks is entitled to the reinstatement of his appellate rights nunc pro tunc under Commonwealth v. Lantzy, 736 A.2d 564 (Pa. 1999).

See Commonwealth v. Parks, No. 1172 EDA 2019, 2020 WL 2394212, at *2 (Pa. Super. May 12, 2020) ("Pa. Super. Op:") (citing Turner/Finley Brief, at 6). In his pro se brief in response to the Turner/Finley brief, Parks presented the following issues:

1. The imposition of costs and victim compensation funds violated the terms of the negotiated plea agreement and IAC for failing to present this in a motion to withdraw the plea or on direct appeal;
2. The plea was unknowing because it was not entered with a full understanding of the consequences when Parks was not advised that the court could impose consecutive sentences and IAC for failing to present this issue in a motion to withdraw the plea or on direct appeal;
3. The plea was "the invalid consequence of the trial court['s active participation in plea negotiations" and IAC for failing to present this issue in a motion to withdraw the plea or on direct appeal; and
4. PCRA counsel was ineffective for failing to present these issues in the amended PCRA petition.

Commonwealth v. Parks, 1172 EDA 2019, Response to Turner/Finley brief, at 2-3 (Pa. Super. Nov. 19, 2019) (attached to Doc. 1 at 34-59).

On May 12, 2020, the Superior Court affirmed the PCRA court, concluding that Parks waived his challenge to the imposition of costs and compensation funds, and rejecting the remainder of the claims raised in both counsel's Turner/Finley letter and Parks' response to the Turner/Finley letter. Pa. Super. Op., 2020 WL 2394272 at *3-6. Parks did not seek allowance of appeal in the Pennsylvania Supreme Court.

(Doc. No. 22 at 2–4) (footnote added).

---

[3]    A Turner/Finley no-merit brief or letter is a filing made by counsel if he or she wishes to withdraw from representing a PCRA petitioner.

On September 4, 2020,[4] Parks filed his § 2254 habeas Petition with the United States District Court for the Eastern District of Pennsylvania.  (Doc. No. 1.)  The Petition raises the following grounds for relief:

1. The trial and Appellate courts unreasonably determined that their breach of Petitioner's negotiated plea sentence was waived.
2. The trial and Appellate courts unreasonably determined that the sentencing court's active participation in Petitioner's plea did not render the plea involuntary.
3. The trial and Appellate courts unreasonably determined that their failure to convey that Petitioner's sentence could run concurrently or consecutively did not render the plea unknowing.

(See Doc. No. 1 at 8–12.)

In her R&R, the Judge Hey recommended that the Petition be denied.  (Doc. No. 22 at 1.)

On April 5, 2022, Petitioner filed Objections to the R&R.  (Doc. No. 28.)  The Objections to the R&R assert the following issues:

1. Trial Court breached the negotiated plea agreement by imposing fines through inclusion of costs and victims' compensation fund/victim and witness services;

2. Trial Counsel and PCRA counsel's performance were ineffective and prejudiced Petitioner; and

3. The Court's Active Participation in His Guilty Plea Colloquy Rendered the Plea Involuntary.

(Doc. No. 28 at 4–18.)

---

[4]   Although the Petition was docketed on September 14, 2020, the federal court employs the "mailbox rule," deeming the petition filed when given to prison authorities for mailing.  Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (citing Houston v. Lack, 487 U.S. 255 (1988)). Parks states that he mailed the petition on September 4, 2020 (Doc. No. 1 at 19), and the petition is postmarked September 11, 2020.  (Id. at 61.)  Although Parks does not require the benefit of the mailbox rule here, Judge Hey accepted September 4, 2020 as the filing date according to the R & R.  (Doc. No. 22 at 4, n. 4.).

For reasons discussed below, the Court will approve and adopt the R&R (Doc. No. 22) and will deny the Petition (Doc. No. 1).

## III.    STANDARDS OF REVIEW

### A.  Magistrate Report and Recommendation

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  See § 636(b)(1)(B); E.D. PA. CIV. R. 72.1.  Any party may file objections in response to the magistrate judge's report and recommendation.  § 636(b)(1)(C). Whether or not an objection is made, a district judge "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge with further instructions." Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 784, 878 (3d Cir. 1987).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation.  E.D. PA. CIV. R. 72.1.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina Coll. v. Russell, 499 U.S. 255, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge],

in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

**B. Merits Review**

Under the federal habeas statute, review will only be granted if: (1) the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the court's decision "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)–(2). Determinations of factual issues made by a state court "are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

This burden is substantial. The Supreme Court has explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413–13 (2000). With respect to "the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. As the Third Circuit has noted, "an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless the court determines that a state court's incorrect or erroneous

application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411). Deference is given to state court rulings, and the application of the "contrary to" and "unreasonable application clauses" has proven to be "difficult to meet". Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

### C.  Exhaustion and Procedural Default

For a petitioner's habeas claim to be considered by a federal court, the petitioner must meet the exhaustion requirement prescribed by Section 2254(b). This provision requires a petitioner "give the state courts one full opportunity" to cure the Petitioner's alleged constitutional violations. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Exhaustion requires the petitioner to present to the state courts the same legal theory applied to the same facts. Landano v. Rafferty, 897 F.2d 661, 669 (3d Cir. 1990). A petitioner bears the burden of demonstrating that he has exhausted each claim in each level of the state judicial system. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

It also requires the petitioner to preserve each claim at the state appellate level. See Holloway v. Horn, 355 F.3d 707, 714. (3d Cir. 2004) (exhaustion satisfied only if claim fairly presented at each level of the state court system) (citing O'Sullivan, 526 U.S. at 844–45). The habeas petitioner has the burden of proving exhaustion. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

### D.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong test as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, petitioner's counsel is presumed effective unless petitioner can show that: (1) counsel's "representation fell below an objective standard of reasonableness;" and (2) counsel's deficient performance prejudiced the

petitioner.  Id. at 687–96.  When assessing counsel's reasonableness, the Supreme Court has recognized that "advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."  Id. at 681.  Both prongs of the Strickland test must be met to show a "reasonable probability that, but for [his counsel's] unprofessional errors, the result of the proceeding would have been different."  Id. at 687–88, 694. "Judicial scrutiny of counsel's performance must be highly deferential . . . [and a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.

Additionally, when a state court has already rejected an ineffective assistance of counsel claim, a federal court must defer to the previous decision, pursuant to 28 U.S.C. § 2254(d)(1).

> If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).  Where the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable.

Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (per curiam) (citations omitted).

## IV.   ANALYSIS

### A.  Petitioner's Claim that the Court Breached the Plea Agreement is Meritless

As noted, Petitioner makes three Objections to the Report and Recommendation ("R&R"). (Doc. No. 22.)  First, Petitioner argues that the Court breached the negotiated plea agreement by imposing court costs and payment to a victim compensation fund.  Id. at 9.  Second, Petitioner argues that the Court's active participation in his guilty plea colloquy invalidated the plea by rendering it involuntary.  (Doc. No. 1 at 10.)  Finally, Petitioner argues that his counsel at trial and

the PCRA proceedings were ineffective, and their ineffectiveness prejudiced the outcome of his case.  (Doc. No. 28 at 3.)  The Court will address each of these Objections in turn.

### 1.  Imposition of Costs and Payment to Crime Victim Compensation Fund

First, Petitioner argues that the Court breached the negotiated plea agreement by imposing costs and a payment to the Crime Victim Compensation Fund.  (Doc. No. 22 at 9.)  In his Petition, he contends that this requirement was not included in the negotiated plea agreement and it was not even mentioned during negotiations.  (Doc. No. 1 at 8; Doc. No. 28 at 10.)  Petitioner further alleges that the United States Magistrate Judge failed to determine whether the sentence was invalidated by the imposition of costs and the payment to the compensation fund, arguing that the sentence is illegal and the issue is non-waivable.  (Doc. No. 28 at 10.)

A defendant must be made aware of the "'direct consequences' of a guilty plea." Jamison v. Klem, 544 F.3d 266, 276-77 (3d. Cir. 2008) (emphasis in original) (quoting Brady v. United States, 397 U.S. 742, 755 (1970)).  "A direct consequence is one that has a "definite, immediate, and largely automatic effect" on the range of the defendant's punishment.'" United States v. Bruno, Crim. No. 11-15, 2014 WL 2895415, at *13 (W.D. Pa. June 25, 2014) (quoting Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995)).  "Consequences . . . [that] are not related to the length or nature of the sentence imposed on the basis of the plea" are considered collateral consequences. Bruno, 2014 WL 2895415, at *13 (quoting United States v. Romero-Vilca, 850 F.2d 177, 179 (3d Cir. 1988)).

While fines are considered direct consequences, costs and restitution, which would include a payment to the Crime Victim Compensation Fund, are collateral consequences.  Although there are no decisions from courts in the Third Circuit discussing whether costs and restitution are direct or collateral consequences of a plea in federal court, Pennsylvania courts have held that "[b]oth

costs and restitution are designed to have the defendant make the government and the victim whole. . . . . Costs and restitution are akin to collateral consequences.  Conversely, fines are considered direct consequences and, therefore, punishment."  Commonwealth v. Rivera, 95 A.3d 913, 916 (Pa. Super. 2014).

Moreover, the Third Circuit Court of Appeals has held that where "fines go to victim compensation via the Crime Victims Fund, the purpose [of those payments] is victim compensation and restitution rather than payment of costs and imprisonment."  United States v. Spiropoulos, 976 F.2d 155, 166 (3d Cir. 1992).  Similarly, the objective of the payments to the Victim Compensation Fund in this case is to provide compensation and restitution to victims.  These payments are considered by this Court to be restitution and therefore are collateral consequences.

The Third Circuit has held in general that Federal Rule of Criminal Procedure 11 does not require courts to inform parties entering into a negotiated plea agreement of the collateral consequences because "consequences no matter how unpalatable which are not related to the length or nature of the federal sentence cannot be considered direct consequences."  (3d Cir. 1977).  Kincade v. United States, 559 F.2d 906, 908–9 (3d Cir. 1977).  Further, Pennsylvania courts have "consistently ruled that a defendant's lack of [awareness of] collateral consequences to the entry of a guilty plea does not render a plea unknowing or involuntary."  Commonwealth v. Brown, 680 A.2d 884, 887 (Pa. Super. 1996) (citations omitted).  Due process requirements are not violated by the court's failure to advise a defendant of "adverse collateral consequences" of a guilty plea, "even if they are foreseeable."  Livingston v. Pitkins, Civ. No. 09-1278, 2012 WL 3011786, at *7 (M.D. Pa. July 23, 2012).

The United States Supreme Court has held that consequences are direct when they are so "intimately related to the criminal process" that they automatically follow a guilty plea or criminal

conviction. Padilla v. Kentucky, 599 U.S. 356, 357 (2010). And courts in other Circuits have recognized collateral consequences to include the loss of the rights to vote, own a gun, or hold a driver's license. Ruelas v. Wolfenbarger, 580 F.3d 403, 408 (6th Cir. 2009); Meaton v. United States, 328 F.2d 379, 381 (5th Cir. 1964); Moore v. Hinton, 513 F.2d 781, 782 (5th Cir. 1975). Because court costs and payment to a victim compensation fund are not part and parcel of the sentence and do not relate to the duration of the sentence, these consequences are collateral.

Further, Petitioner argues that "a court must determine whether a defendant is able to pay a financial sentence prior to imposing such a sentence. Otherwise, the sentence is illegal and is a non-waivable issue." (Doc. No. 28 at 8.) Contrary to Petitioner's contention, however, the limitation on a sentencing court's power to impose financial sentences is narrow, and explicitly applies to fines. Commonwealth v. Boyd, 73 A.3d 1269, 1272 (Pa. Super. 2013). This is because fines are punitive in nature. In Boyd, the Pennsylvania Superior Court evaluated the legality of the defendant's sentence with respect to his or her ability to pay the fine. The court found that the relevant state statute requires the defendant's ability to pay be "of record." See 42 PA. CONS. STAT. ANN. § 9726(c)(1). This requires the court to ascertain the defendant's financial competency with respect to the imposition of fines "from the face of the record," eliminating the use of the court's own reasoning or discretion. Id. at 1273–74. However, the Boyd court explicitly distinguished the imposition of fines from restitution payments, explaining that fines should only be imposed when they will not interfere with the defendant's ability to pay restitution to victims. Id. at 1273.

Here, Petitioner is unable to show that the trial court's imposition of costs and payment to a crime victim compensation fund are "direct consequences" of his negotiated guilty plea because the costs and payment are not punitive in nature. As noted in the above cases, court costs and restitution are considered collateral consequences because they do not relate to or effect the

duration or nature of the sentence.  Thus, Petitioner's lack of awareness regarding these collateral consequences does not render the plea agreement invalid or illegal.  The Report and Recommendation on this issue will be adopted.

### B. Petitioner's Claim that the Court's Active Participation in his Guilty Plea Colloquy Invalidated the Plea is Without Merit

Petitioner's second argument is that the trial court improperly participated in the plea agreement negotiations, thereby rendering the plea involuntary.  (Doc. No. 28 at 14.)  Petitioner alleges that the record establishes that, but for the trial court's participation in the plea negotiations,[5] Petitioner would have rejected the plea agreement offer and gone to trial.  (Doc. No. 28 at 16.)  As reflected in the record and discussed below, this claim is meritless.

### 1. The Court Did Not Participate in the Plea Negotiations.

Petitioner asserts that the plea was tainted by the trial court's participation in the negotiations, resulting in manifest injustice.  (Doc. No. 1 at 50.)  However, because Petitioner is referring to the Court's discussions on the record with him during the plea colloquy, this claim is without merit.  Due Process requires that a defendant's plea be voluntary and intelligent.  McCarthy v. United States, 394 U.S. 459, 466 (1969).  A court must look to "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). In this regard, a guilty plea is only valid when the defendant understands the "nature of the charge

---

[5]   The prohibition against judicial participation in plea agreement negotiations is governed by Rule 11(c)(1)[5] and serves several purposes.  These purposes include: (1) eliminating the possibility of judicial pressure on the defendant to enter a guilty plea; (2) promoting impartiality and mitigate or eliminate bias of the judge; and (3) preventing the judge from appearing to be "an advocate for the agreement," thereby maintaining his or her role as the "neutral arbiter." United States v. Brown, 595 F.3d 498, 520 (3d Cir. 2010).

and the consequences of his plea". <u>McCarthy</u>, 394 U.S. 459 at 467.  A "heavy burden" is placed on the "habeas petitioner [who] challeng[es] the voluntary nature of his . . . guilty plea." <u>Zilich v. Reid</u>, 36 F.3d 317, 320 (3rd Cir. 1994).

Great weight is assigned to the verity of the plea due to the intensive nature of the plea colloquy and declarations made under oath.  <u>Id.</u>  And a judge has the responsibility of ensuring that the defendant fully understands the meaning of the plea and its repercussions.  <u>Boykin v. Alabama</u>, 395 U.S. 238, 244 (1969) (citing <u>Garner v. Louisiana</u>, 368 U.S. 157, 173 (1961)).  The court's "canvassing the matter with the accused" is essential to the colloquy process and ensures that the judge "leaves a record adequate for any review that may be later sought." <u>Id.</u>

Here, Petitioner fails to establish that his plea was entered involuntarily or unknowingly.  The record reflects the contrary, with the exchanges between Judge McDermott and Petitioner demonstrating that the court was dedicated to ensuring that Petitioner was fully aware of the conditions of the plea agreement, including the rights he was waiving by entering the plea and the range of time Petitioner could be sentenced to serve.

Judge McDermott and Petitioner first interacted at the start of the plea hearing, which occurred after the plea negotiations were completed.  Petitioner does not claim otherwise.  Further, the record reflects that his decision to plead guilty was made of his own volition, after having an off the record conversation with his wife.

> THE COURT: "So, good morning, Mr. Parks.  I'll get you sworn in a minute.  I'm Judge McDermott, all right."
>
> PETITIONER: "Yes."
>
> THE COURT: "So I always like to introduce myself and make sure I understand and that you understand, because you have to make the better decision for you.  And it sounds like you have two choices here: Take a plea or go to trial."

(<u>N.T.</u> 8/2/2018 at 5.)

The record reflects that there were two offers conveyed to Petitioner prior to the start of the guilty plea hearing.  These offers were the result of negotiations that were previously completed between the Petitioner and the prosecutors, not the Judge.

> THE COURT: "Okay.  So what were the—how could there be two offers?  Does he have other cases?"
>
> DEFENSE ATTORNEY: "There was an option—"
>
> THE COURT: "Let me hear it."
>
> DEFENSE ATTORNEY: "—from Ms. Fertel to me.  And this was made some time ago.  The offer to Mr. Parks was either to accept 6 and a half to 15 years or 6 to 20 years on the same charge.  I believe it was the attempted murder."

(<u>N.T.</u> 8/2/2018 at 14.)

Next, the court discussed the sentencing possibilities with Petitioner in the event he was to go to trial.  The court described the statutory minimums and maximums, the possibility of concurrent versus consecutive sentences, and other factors including back time that could be added to Petitioner's sentence because of Petitioner's parole violation.  (<u>N.T.</u> 8/2/2018 at 9-12.)  The court was explicit regarding its neutral role in the plea colloquy process, and even gave Petitioner an opportunity to discuss his options privately with his wife.  (<u>N.T.</u> 8/2/2018 at 29.)

After Petitioner spoke with his wife, he accepted the negotiated plea.  The court took a substantial amount of time to ensure that his acceptance was knowing and voluntary.

> THE DEFENDANT: "Your Honor, I'll take the six and a half to fifteen."
>
> THE COURT: "Are you sure about this?"
>
> THE DEFENDANT: "Yes."
>
> THE COURT: "Okay.  And it's your decision, not your wife's decision?"

THE DEFENDANT: "No.  It's my decision, for the best."

(N.T. 8/2/2018 at 30.)

The court ensured that the Petitioner was aware of the difference between the options of 6 and a half to 15 and the alternate offer of 6 to 20.  (N.T. 8/2/2018 at 17.)  The court continued to explain how credit for time served may be applied to his sentence, as well as the limits to Petitioner's appellate rights.  The court explained that there were four grounds from which the Petitioner could appeal.

> THE COURT: Okay, so the purpose of asking you these questions is to make sure you understand what you're doing.  Even though your appellate rights are limited, I have to explain them to you.
>
> Once you plead guilty and I sentence you, you have the right to an appeal.
>
> There are basically only four grounds from which you could appeal.  One, I didn't understand what I was doing when I pled guilty.  So why do you think I'm asking you all these questions?
>
> THE DEFENDANT: So later on, if I try to come back.
>
> THE COURT: The record is here.
>
> THE DEFENDANT: Yes.
>
> THE COURT: But—that's part of it, but part of it also is to make sure you know what you're doing and that there are not—nothing's hidden here.
>
> You get exactly what I tell you [that] you get.  So it protects you as well.  That's part of the reason I ask you these questions.  But it's to make sure that you make, what I started out with in the beginning, the better decision or the best decision you could make for yourself today.
>
> So I will conclude at the end of this that you're making a knowing, voluntary, and intelligent decision.  So your chances of appeal are pretty small.
>
> If I give you an illegal sentence, you could automatically--- you could appeal that.  I'm not going to give you an illegal sentence.  I already went over the statutory maximum.

The other reason you could appeal—be successful on appeal is if you were in the wrong jurisdiction.

Did this incident happen in Philadelphia, counsel?

MS. BORGATTI: Yes.

\*\*\*\*

THE COURT: Then the last one is if your attorney was ineffective.

If, in other words, his standard of representing you is so far below what's the acceptable standard.

(N.T. 8/2/2018 at 40–41.)

The court proceeded to hear the facts of the case and the evidence from the prosecutor, ensuring that the Commonwealth had sufficient evidence to be able to successfully convict Petitioner of the offenses before accepting his plea. (N.T. 8/2/2018 at 43–47.) This evidence included testimony from the victim, testimony from two eyewitnesses who were known to Petitioner, as well as surveillance video showing Petitioner's wife's vehicle fleeing from the area of the incident. (Id. at 44–45.) The court also ensured that Petitioner fully understood and completed an extensive written guilty plea colloquy, further certifying that Petitioner's guilty plea was voluntary and knowing. (N.T. 8/2/2018 at 48.) In the written plea colloquy, Petitioner explicitly acknowledged that if he rejected both offers and was found guilty at trial, he could have been sentenced to up to fifty years imprisonment and fined $50,000. (Doc. No. 22 at 17.) This clearly demonstrates that Petitioner avoided substantial prison time by accepting the guilty plea rather than going to trial.

Finally, rather than encouraging Petitioner's acceptance of the guilty plea, the judge successfully maintained her role as "neutral arbiter" during the plea agreement proceedings. Brown, 595 F.3d 498 at 520. This is evidenced by the many instances where the court advised

Petitioner about the consequences of his pleading guilty as opposed to rejecting the agreement.  In this regard, the only discussions noted by Petitioner are those that occurred in open court at his guilty plea colloquy, where the judge explicitly reminded him several times that she was not "on either side" of the agreement and that she wanted Petitioner to make the "better" or "best" decision for himself.  (N.T. 8/2/2018 at 5, 26, 28, 40).  These exchanges show that the court was not looking to pressure or coerce the defendant into entering the plea.  The court counseled Petitioner through the process and "watched [him] struggle with his decision."  (N.T. 8/2/2018 at 34).  This demonstrates that the judge did not seek to advocate for one decision over another.

Thus, for all these reasons, Petitioner's Objection that Judge McDermott unlawfully participated in his guilty plea is without merit.

### C.  Petitioner's Claim That Trial Counsel and PCRA Counsel Were Ineffective is Meritless

Petitioner's last argument is that both trial counsel and PCRA counsel rendered ineffective assistance of counsel that had a prejudicial effect on the outcome of his case.  In Petitioner's Objections to the Magistrate's Report and Recommendation, Petitioner contends that trial counsel was ineffective in failing to file post-sentence motions, a motion to withdraw the plea, and a direct appeal in response to the court's non-compliance with the terms of the negotiated plea agreement. (Doc. No. 28 at 4.)  Petitioner also argues that PCRA counsel was ineffective for failing to pursue issues requested by Petitioner, and for filing a no-merit letter and motion to withdraw Petitioner's claims.  (Doc. No. 28 at 9.)

The state court already rejected these same claims of ineffective assistance of counsel.[6]  As stated supra, federal courts are required to give deference to the state court's findings regarding

---

[6]   Pennsylvania's application of the Strickland test has three elements: (1) the merit of the underlying claim; (2) the reasonableness of counsel's action or inaction; and (3) whether

Case 2:20-cv-04532-JHS   Document 29   Filed 08/11/22   Page 18 of 21

ineffective assistance of counsel on habeas review.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004)[7].  Ineffective assistance claims are governed by the two-prong "performance and prejudice test" set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, the performance prong requires Petitioner to demonstrate that counsel's assistance fell below an objective standard of reasonableness.  <u>Id.</u> at 687–96.  Second, the prejudice prong requires Petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Tome v. Stickman</u>, 167 F. App'x 320, 324 (3d. Cir. 2006) (citing <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)).  In <u>Strickland</u>, the Court held "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  <u>Strickland</u>, 266 U.S. 688, 697 (1984).

**1.  Petitioner's Claim that Trial Counsel was Ineffective for Failing to File Post Sentence Motions, Motion to Withdraw the Plea, or a Direct Appeal is Meritless**

Petitioner contends that trial counsel should have filed post-sentence motions, a motion to withdraw the plea, or a direct appeal in response to the court's non-compliance with the terms of the negotiated plea agreement.  (Doc. No. 28 at 4.)  Petitioner's Objection relies on the contention that the trial court breached the plea agreement and invalidated the plea by imposing costs and victim compensation payments.  <u>Id.</u>  He also seems to argue that his plea was unknowingly and

---

petitioner has sufficiently demonstrated that counsel's ineffectiveness caused Petitioner to suffer prejudice.  <u>Commonwealth v. Sepulveda</u>, 55 A.3d 1108, 1117 (Pa. 2012).

[7]  A federal court can grant a habeas corpus petition when a petitioner is being held as the result of "a state-court judgment if the state adjudication resulted in a decision that was 'contrary to, or involved an unreasonable application of, clearly established federal law'. . . "  <u>Id.</u> at 655 (citing 28 U.S.C. § 2254(d)(1)).

involuntarily entered because the court mentioned the alternative sentences that were offered to him prior to entering the plea.

However, as discussed above, the imposition of court costs and restitution are collateral consequences and thus are not considered punishment. <u>Commonwealth v. Rivera</u>, 95 A.3d 913, 916 (Pa. Super. 2014). Rather, costs and victim compensation fund payments are imposed to bring the court and the victim of the defendant's crime to the point they would have been in but for the defendant's commission of the offense. <u>Id.</u> Because collateral consequences do not automatically invalidate a guilty plea, the "performance" element under Pennsylvania's application of the <u>Strickland</u> test is not met, as the underlying claim does not have merit. Counsel's inaction was therefore reasonable, as it is well established that counsel cannot be "deemed ineffective for failing to raise a meritless claim." <u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000).

Furthermore, his plea was knowingly and voluntarily entered. He made a voluntary decision on which proposed sentence to accept after conferring with his wife. He informed the judge of his decision. In addition, trial counsel was not ineffective for failing to file post-sentence motions because no meritorious issues were present. Thus, Petitioner's Objection regarding ineffective assistance of counsel for failure to file post-sentence motions, a motion to withdraw the plea, and a direct appeal in response to Petitioner's claims that the court did not comply with the terms of the negotiated plea agreement will be overruled.

2.  **Petitioner's Claims that PCRA Counsel was Ineffective for Failing to Raise that (1) Trial Counsel was Ineffective for Not Objecting to the Trial Court's Participation in the Plea Negotiations and (2) Trial Counsel Was Ineffective for Failing to File a Petition to Withdraw the Plea are Meritless**

Petitioner claims that trial counsel was ineffective for failing to object to the trial court's participation in the plea negotiations.  (Doc. No. 28 at 2.)  Further, Petitioner claims that PCRA counsel was ineffective for failing to raise this issue on collateral review.  (Id.)

As discussed above, the record reflects that Petitioner made the knowing and voluntary decision to enter a guilty plea after discussing the offers with his wife. Petitioner informed the judge of his decision to accept one of the offers and assured the court that it was his decision and that it was "for the best."  (Id. at 30.)  Contrary to Petitioner's contentions that the court pressured him into entering the guilty plea, the record reflects that the trial court's primary concern was ensuring that Petitioner was able to make the decision of his own volition.  Because Petitioner's argument that the trial court's participation in his plea negotiations fails, his claim that PCRA counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for not objecting to the trial court's improper participation also fails.

Petitioner's claim that PCRA counsel was ineffective for failing to file a motion to withdraw the plea on this ground must also fail, as counsel cannot be "deemed ineffective for failing to raise a meritless claim."  Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  PCRA counsel's failure to bring forth a meritless claim does not render counsel's performance to be below the reasonableness standard.  Thus, Petitioner's Objections will be overruled.

### 3. Petitioner's Claims that PCRA Counsel was Ineffective By Failing to Pursue Issues Requested by Petitioner and By Filing a No-Merit Letter are Meritless

Finally, Petitioner contends that PCRA counsel was ineffective for failing to amend Petitioner's pro se PCRA application and raise the issues requested by Petitioner, including the illegality of Petitioner's sentence with respect to the court's imposition of costs and victim compensation payments. (Doc. No. 28 at 3.) He also claims that PCRA counsel was ineffective for filing a no-merit letter.

As discussed above, counsel will not be found ineffective for "fail[ure] to raise a meritless claim." Werts, 288 F.3d 178 at 203. Because Petitioner's claim that his sentence is rendered illegal by the court's imposition of costs and payments is without merit, PCRA counsel did not render a deficient performance. PCRA counsel's filing of the Turner/Finley no-merit letter and petition to withdraw as counsel not only demonstrate that Petitioner's claims were meritless, but also that counsel carefully considered each issue as required by the rules of professional responsibility.

Since Petitioner's claims fail on the merits, PCRA counsel's actions cannot be considered unreasonable or prejudicial. Thus, Petitioner's Objections regarding ineffective assistance of PCRA counsel for failure to raise the issues requested by Petitioner and filing a no merit letter will be overruled.

## V.    CONCLUSION

For the foregoing reasons, the Court will overrule Petitioner's Objections to the Magistrate Judge's Report and Recommendation (Doc. No. 28), will approve and adopt Magistrate Judge Hey's Report and Recommendation (Doc. No. 22), and will deny the Petition for Writ of Habeas Corpus (Doc. No. 1).